UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CROWN CORK & SEAL COMPANY, INC. MASTER RETIREMENT TRUST, et al.,<br>      Plaintiffs,<br>   v.<br>CREDIT SUISSE FIRST BOSTON CORP., et al.,<br>      Defendants. | Case No. 12-05803-JLG<br>Judge James L. Graham |
| STATE OF ARIZONA, et al.,<br>      Plaintiffs,<br>   v.<br>CREDIT SUISSE FIRST BOSTON CORP., et al.,<br>      Defendants. | Case No. 12-05804-JLG<br>Judge James L. Graham |
| CITY OF CHANDLER, et al.,<br>      Plaintiffs,<br>   v.<br>BANK ONE, N.A., et al.,<br>      Defendants. | Case No. 12-05805-JLG<br>Judge James L. Graham |
| LLOYDS TSB BANK PLC,<br>      Plaintiff,<br>   v.<br>BANK ONE, N.A., et al.,<br>      Defendants. | Case No. 12-07263-JLG<br>Judge James L. Graham |
| METROPOLITAN LIFE INSURANCE COMPANY, et al.,<br>      Plaintiffs,<br>   v.<br>BANK ONE, N.A., et al.,<br>      Defendants. | Case No. 12-07264-JLG<br>Judge James L. Graham |

**MEMORANDUM OF METLIFE AND LLOYDS IN SUPPORT OF
THE APPLICATION OF NEW YORK'S LOSS ALLOCATION RULES
TO THEIR COMMON LAW CLAIMS AT TRIAL**

**TABLE OF CONTENTS**

Page

**PRELIMINARY STATEMENT** ........................................................................................1

**I.     BACKGROUND**..................................................................................................3

      A.     MetLife and Lloyds's Pending Claims ................................................3

      B.     The Bar Orders .....................................................................................3

**II.    ARGUMENT**........................................................................................................4

      A.     Loss Allocation For Non-Common Law Claims Is Governed By Statute.............4

      B.     Loss Allocation Issues For MetLife and Lloyds's Common Law Claims Against Credit Suisse Should Be Governed By New York Law ..........................5

            1.     The Court Should Apply New Jersey's Choice of Law Rules..................5

            2.     New York Law Should Apply In Allocating Losses to Credit Suisse ..................7

      C.     Credit Suisse Is Jointly And Severally Liable Under New York Law...................9

**CONCLUSION** ................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Chianese v. Meier*,
    774 N.E.2d 722 (N.Y. 2002) .................................................................................................. 10

*Cooney v. Osgood Machinery, Inc.*,
    612 N.E.2d 277 (N.Y. 1993) .................................................................................................... 9

*Dorsey v. Yantambwe*,
    715 N.Y.S.2d 566 (2d Dep't 2000) .......................................................................................... 9

*Gannon v. Personnel Agency, Inc. v. City of New York*,
    57 A.D.2d 538 (1st Dep't 1977) ............................................................................................. 10

*Gerena v. Korb*,
    617 F.3d 197 (2d Cir. 2010) .................................................................................................... 5

*Graphic Arts Mut. Ins. Co. v. Bakers Mut. Ins. Co. of New York*,
    382 N.E.2d 1347 (N.Y. 1978) .................................................................................................. 9

*In re Brooklyn Navy Yard Asbestos Litig.*,
    971 F.2d 831 (2d Cir. 1992) .................................................................................................. 10

*Klinger v. Dudley*,
    361 N.E.2d 974 (N.Y. 1977) .................................................................................................... 9

*Neumeier v. Kuehner*,
    286 N.E.2d 454 (N.Y. 1972) ........................................................................................... 2, 6, 9

*P.V. v. Camp Jaycee*,
    962 A.2d 453 (N.J. 2008) ..................................................................................................... 6, 7

*Padula v. Lilarn Props. Corp.*,
    644 N.E.2d 1001 (N.Y. 1994) .................................................................................................. 2

*Schultz v. Boy Scouts of Am.*,
    480 N.E.2d 679 (N.Y. 1985) .................................................................................................... 6

*Somner v. Fed. Signal Corp.*,
    593 N.E.2d 1365 (N.Y. 1992) ................................................................................................ 10

**STATUTES AND RULES**

15 U.S.C. § 78j(b) ........................................................................................................................... 3

15 U.S.C. § 78t ............................................................................................................................... 3

15 U.S.C. § 78u-4(f)(2)(A) ........................................................................................... 4-5

17 C.F.R. § 240.10b-5(b) ................................................................................................. 3

28 U.S.C. § 1404(a) ...................................................................................................... 2, 5

N.J. Stat. Ann. § 49:3-71 ............................................................................................... 3, 5

N.Y. C.P.L.R. § 1601 ...................................................................................................... 10

N.Y. C.P.L.R. § 1602(5) ................................................................................................. 10

N.Y. Gen. Oblig. Law § 15-108(a) ................................................................................. 10

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 6 ............................................................. 6-7

Restatement (Second) of Conflict of Laws § 145 .................................................... 6, 7, 8

Restatement (Second) of Conflict of Laws § 171 ............................................................ 6

Restatement (Second) of Conflict of Laws § 172 ............................................................ 6

4 Weinstein, Korn & Miller, N.Y. Civ. Prac.: CPLR P 1601.01 (2d ed. 2012) ............. 10

Plaintiffs Metropolitan Life Insurance Company and Metropolitan Tower Life Insurance Company, successor by merger to Metropolitan Insurance and Annuity Company (collectively, "MetLife"), and Lloyds TSB Bank plc ("Lloyds") respectfully submit this memorandum in support of the application of New York's loss allocation rules to their common law claims against Credit Suisse (USA) LLC and Credit Suisse AG, New York Branch (collectively, "Credit Suisse") at trial.[1]

## PRELIMINARY STATEMENT

During the status conference call held on November 26, 2012, the Court directed the parties to brief the issue of which state's law would apply to loss allocation issues and how the bar orders executed with the settling defendants impact this analysis. Credit Suisse first raised this issue in its briefing concerning whether the claims against defendant Lance Poulsen ("Poulsen") should be severed at trial, and whether Credit Suisse and Poulsen could be held jointly and severally liable. Credit Suisse stated that although MetLife and Lloyds (and the Arizona plaintiffs) assumed that New York's loss allocation rules will apply to their common law claims, "the question of which state's law applies for loss allocation purposes was not decided by the Court on summary judgment and remains an open question . . . ." Credit Suisse's Reply to Plaintiffs' Submissions Regarding the Participation of Defendant Lance Poulsen at Trial, No. 12-cv-5803, D.E. 86, Nov. 20, 2012 ("CS Reply"), at 9.

Credit Suisse has not argued that another state's law should be applied for loss allocation purposes, and consequently has not demonstrated any conflict exists with New York law in any way. In fact, Credit Suisse has previously argued that under New Jersey's choice of law rules, New York law should apply to MetLife and Lloyds's common law tort claims. *See*

---

[1] The loss allocation rules applicable to MetLife and Lloyds's federal securities law claims and to MetLife's New Jersey Blue Sky law claims are, as more fully shown below, set forth in each of those respective statutes.

1

Memorandum of Credit Suisse in Support of Their Consolidated Motion for Summary Judgment in the Noteholder Actions, MDL D.E. 1520, Feb. 20, 2009, at 56-60; Reply Memorandum of Law in Further Support of the Consolidated Motion for Summary Judgment in the Noteholder Actions Filed by Credit Suisse, MDL D.E. 1657, July 17, 2009, at 19-38.[2] In deciding Credit Suisse's motion for summary judgment, this Court agreed. *See In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 846 F. Supp. 2d 828, 849-54 (S.D. Ohio 2012) ("SJ Order").

Because MetLife and Lloyds's actions were transferred to this Court from the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a), New Jersey's choice of law rules will also be applied to any loss allocation issues.[3] Thus, the relevant analysis has already been performed by the Court. The same analysis should lead to the same result: New York law should apply to any loss allocation issues with respect to MetLife and Lloyds's common law claims against Credit Suisse, including joint and several liability. Under New York law, Credit Suisse is jointly and severally liable for all damages arising out of MetLife and Lloyds's common law fraud claims. Credit Suisse has further admitted that under New York law, the jury can allocate fault to Poulsen on the verdict form regardless of whether the claims against him are severed at trial. *See* CS Reply, at 9-10.

---

[2] "MDL D.E. __" refers to the docket entry number on the consolidated MDL docket, No. 2:03-md-1565 (S.D. Ohio).

[3] In raising this issue, Credit Suisse cited *Padula v. Lilarn Properties Corporation*, 84 N.Y.2d 519, 521-22 (N.Y. 1994), which discusses New York's choice of law rules for loss allocation issues as set forth in *Neumeier v. Kuehner*, 286 N.E.2d 454 (N.Y. 1972). *See* CS Reply, at 9. This test is inapplicable to MetLife and Lloyds's claims because this Court must apply the choice of law rules of the transferor state. However, assuming *arguendo* the *Neumeier* rules did apply, New York law would still apply to any loss allocation issues. *See* note 8, *infra*.

# I.
# BACKGROUND

## A.     MetLife and Lloyds's Pending Claims

MetLife's pending claims against Credit Suisse Securities allege: (1) fraud; (2) violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5(b) ("Section 10(b)"); and (3) violations of N.J. Stat. Ann. § 49:3-71 (the "New Jersey Blue Sky laws").  MetLife's claims against Poulsen allege, *inter alia*: (1) fraud; (2) violations of Section 10(b); (3) violations of Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t ("Section 20(a)"); and (4) violations of the New Jersey Blue Sky laws.

Lloyds currently has claims against Credit Suisse alleging: (1) fraud (arising out of Lloyds's purchase of NPF XII 2001-1 notes); and (2) violations of Section 10(b).  Lloyds has a pending claim against Poulsen for violating Section 20(a), *inter alia*, but does not allege a claim for fraud.

## B.     The Bar Orders

As the Court is aware, over the course of this litigation, MetLife and Lloyds have entered into settlements with certain defendants.  In August 2005, Lloyds settled its claims against Deloitte & Touche LLP.  In April 2008, MetLife and Lloyds settled their claims against NCFE's trustees and directors: Bank One, N.A., Bank One Corporation, Banc One Capital Markets, Inc., JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., JPMorgan Partners, LLC, The Beacon Group, LLC, Linda E. Johnson, Executor of the Estate of Harold W. Pote, Thomas G. Mendell, Eric R. Wilkinson and The Beacon Group III – Focus Value Fund, L.P. (collectively, the "Trustees").  In July 2008, Lloyds settled its claims against Fitch, Inc.

In connection with both the settlements with the Trustees and Fitch, the Court entered Agreed Orders and Judgments, which barred indemnity and contribution claims by the non-

3

settling defendants and entitled those non-settling defendants to a judgment credit at trial. *See* Agreed Order and Judgment, April 11, 2008, MDL D.E. 1274 ("Trustees Bar Order"); Agreed Order and Judgment, July 30, 2008, MDL D.E. 1393 ("Fitch Bar Order").[4] This credit will be "in an amount that is the greater of (i) the amount the Settling Defendants pay to [MetLife/Lloyds] to settle the [MetLife/Lloyds] Action; or (ii) the amount equal to the judgment times the aggregate proportionate share of fault (expressed as a percentage) of the Settling Defendants, as determined at trial." Trustees Bar Order, ¶¶ 3-4; *see also* Fitch Bar Order, ¶ 3.

The Bar Orders do not determine which state's law is to apply for all loss allocation purposes, and do not prohibit the imposition of joint and several liability. "This judgment reduction provision shall not be considered or deemed a determination, adjudication or concession as to whether the Settling Defendants are jointly and severally liable with the Non-Settling Parties, as to whether any injuries are common, or as to which jurisdiction's law applies." *Id*.

## II.
## ARGUMENT

### A.  Loss Allocation For Non-Common Law Claims Is Governed By Statute

As an initial matter, loss allocation issues such as joint and several liability are provided by statute for MetLife and Lloyds's Section 10(b) claims, and MetLife's New Jersey Blue Sky law claim. These claims are not subject to a choice of law analysis, and whether MetLife and Lloyds's claims against Poulsen are severed has no bearing on the analysis.

Under the Private Securities Litigation Reform Act, any defendant in a private action arising under the Securities Act of 1934 is jointly and severally liable if the trier of fact specifically determines that the defendant "knowingly committed a violation of the securities

---

[4]  There was no bar order entered after the Deloitte settlement.

4

laws." 15 U.S.C. § 78u-4(f)(2)(A). A defendant who did not knowingly commit a violation will be liable "for the portion of the judgment that corresponds to the percentage of responsibility" of that defendant as determined by the jury through the use of special interrogatories. *Id*. § 78u-4(f)(2)(B), 4(f)(3). The jury shall determine – for each defendant and "each of the other persons claimed by any of the parties to have caused or contributed to the loss incurred by the plaintiff, including persons who have entered into settlements with the plaintiff" – whether the person violated the securities laws, the person's percentage of responsibility and whether the person knowingly committed a violation. *Id*. § 78u-4(f)(3)(A). The New Jersey Blue Sky statute provides that every person who "materially aids in the sale or conduct" in violation of the statute is jointly and severally liable with the seller. N.J. Stat. Ann. § 49:3-71(d). Thus, regardless of whether or not Poulsen is severed, his name will be on the jury verdict sheet for these claims, and Credit Suisse will be jointly and severally liable for his percentage of fault, in accordance with the statutes.

### B. Loss Allocation Issues For MetLife and Lloyds's Common Law Claims Against Credit Suisse Should Be Governed By New York Law

#### 1. The Court Should Apply New Jersey's Choice of Law Rules

Federal courts generally apply the choice of law rules of the state in which they preside. *Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010). However, when an action is transferred from one district to another pursuant to 28 U.S.C. § 1404(a) – as MetLife and Lloyds's actions were – the choice of law rules of the transferor state are to be applied, as long as the transferor state could have properly exercised jurisdiction. *Id*. Prior to being transferred to this district, MetLife and Lloyds's actions were pending in the United States District Court for the District of New Jersey, where they were properly venued. *See* Opinion, No. 03-cv-1882, D.E. 73, Sept. 25, 2012, at 7 (in transferring the actions, the Honorable Susan B. Wigenton noted, "[t]here is no dispute

5

that venue is proper in this District. . . .). Therefore, this Court should utilize New Jersey's choice of law rules to determine which state's loss allocation rules should apply. This Court previously applied New Jersey's choice of law rules to determine that New York law should govern MetLife and Lloyds's common law fraud claims. *See* SJ Order, at 849-54. The same result should be reached with respect to any loss allocation issues, including joint and several liability.

New Jersey has adopted the "most significant relationship test" from the Restatement (Second) of Conflict of Laws ("Restatement"). *Id*. at 850-51. For issues relating to damages, section 171 of the Restatement provides: "The law selected by application of the rule of § 145 determines the measure of damages." Comment e explains that the scope of section 171 includes whether damages should be apportioned or whether there is joint and several liability.[5] Section 172 of the Restatement concerns joint torts and provides: "(1) The law selected by application of the rule of § 145 determines the circumstances in which two or more persons are liable to a third person for the acts of each other. (2) The applicable law will usually be the local law of the state where the injury occurred."

Under section 145(1), "The rights and liabilities of the parties with respect to an issue in tort are to be determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."[6] Section 145(2) then directs the court to consider the following contacts:

---

[5] Although New York has a separate choice of law test for loss allocation issues, New Jersey uses the Restatement principles for both conduct regulating and loss allocating rules. *Compare Schultz v. Boy Scouts of Am.*, 480 N.E.2d 679 (N.Y. 1985) (analyzing whether charitable immunity would apply under the *Neumeier* rules) *with P.V. v. Camp Jaycee*, 962 A.2d 453 (N.J. 2008) (analyzing whether New Jersey's charitable immunity statute would apply under the Restatement).

[6] Section 6 identifies the general factors relevant to any choice of law determination:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,

    (a) the place where the injury occurred,

    (b) the place where the conduct causing the injury occurred,

    (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

    (d) the place where the relationship, if any, between the parties is centered.

SJ Order, at 851 (quoting Restatement § 145(2)). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement § 145.

### 2. New York Law Should Apply In Allocating Losses to Credit Suisse

This Court analyzed the contacts relevant under section 145(2) in deciding that New York's law should apply to MetLife and Lloyds's common law claims. *See* SJ Order, at 851-54. While the decision is not necessarily determinative for all loss allocation issues, as choice of law issues are generally analyzed on an issue-by-issue basis, *see Camp Jaycee*, 962 A.2d at 460, the application of section 145(2) to the issue of joint and several liability should lead to the same result. In light of the Court's previous ruling with respect to the governing law, the Court should follow its holding that New York has the most significant relationship to the parties and events of this case.[7]

---

    (c) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability, and uniformity of result, and
    (g) ease in determination and application of the law to be applied.

SJ Order, at 850 (quoting Restatement § 6(2)).

[7] This memorandum addresses the application of New Jersey's choice of law rules to determine which state's law applies in allocating losses to Credit Suisse, including whether Credit Suisse can be held jointly and severally liable with respect to MetLife and Lloyds's common law fraud claims. Which state's law applies to MetLife and Lloyds's common law claims against Poulsen is not relevant to this analysis. However, assuming *arguendo* that this issue was relevant, the Court's holding that New York law applies to MetLife and Lloyds's common law claims against Credit Suisse, discussed *infra*, compels the same result with respect to MetLife and Lloyds's common law claims against Poulsen. The Court has held that MetLife and Lloyds were located in New York and their injuries occurred in New York, *see* SJ Order, at 851-54, and Poulsen should have expected that New York law could have been applied to any common law claims brought by MetLife and Lloyds.

7

With respect to MetLife's claims against Credit Suisse, the Court viewed "this matter as an alleged fraud between a New York seller and New York buyer (who happened to negotiate through its agents in New Jersey)," and concluded "that the relevant considerations of the Restatement weigh in favor of applying New York law." SJ Order, at 854. Although the employees of MetLife who were involved in the note purchases were located in New Jersey, the Court held that "at the end of the day these were securities transactions between two New York businesses. Credit Suisse and MetLife undoubtedly are accustomed to operating under New York law and under the Martin Act in particular, as both parties engage frequently in securities transactions." *Id*. at 854 (citing Restatement § 6(2)(f) and (g); Restatement § 145 cmt. b).

Similarly, with respect to Lloyds's claims against Credit Suisse, the Court held that the first three section 145(2) contacts support the conclusion that New York has the most significant relationship to the occurrence and the parties. *Id*. at 852. "It is undisputed that New York is the state from which Credit Suisse provided materials to Lloyds and otherwise made representations to Lloyds." *Id*. In determining where the parties' relationship was centered, the Court found:

> Credit Suisse and Lloyds dealt with each other in New York – that is where their relationship was centered. The parties should have expected New York law to apply (indeed they contracted for as much in the Participation Agreement), and New York has the greatest interest in regulating the alleged fraudulent transactions that took place almost fully within its boundaries (saving for the steps requiring Lloyds personnel in Miami and London to approve the note purchase).

*Id*. at 853 (citations omitted).

When presented with choice of law issues concerning joint and several liability, there is no reason for the Court to depart from its holding that New York was the center of the

8

relationship between Plaintiffs and Credit Suisse and New York has the most significant interest in the events giving rise to Plaintiffs' claims against Credit Suisse.[8]

C. **Credit Suisse Is Jointly And Severally Liable Under New York Law**

New York law provides for joint and several liability among joint tortfeasors. Because the Court should determine that New York law applies to the issue of joint and several liability, Credit Suisse is jointly and severally liable with respect to any judgment awarded on MetLife and Lloyds's common law fraud claims.[9] "[G]enerally a plaintiff is free to sue, and after favorable judgment collect against, any or all tort-feasors as he sees fit." *Klinger v. Dudley*, 361 N.E.2d 974, 978 (N.Y. 1977). "It is elementary that injured claimants may still choose which joint tort-feasors to include as defendants in an action and, regardless of the concurrent negligence of others, recover the whole of their damages from any of the particular tort-feasors sued." *Graphic Arts Mut. Ins. Co. v. Bakers Mut. Ins. Co. of New York*, 382 N.E.2d 1347, 1350 (N.Y. 1978).

---

[8] While it is clear that New Jersey's choice of law rules should apply here, even if this Court did apply the rules set forth in *Neumeier*, the result would still dictate that New York law should apply to any loss allocation issues. The first *Neumeier* rule provides that where the plaintiff and defendant are domiciled in the same state, the law of that state should control. *See Cooney v. Osgood Machinery, Inc.*, 612 N.E.2d 277, 281 (N.Y. 1993) (applying the *Neumeier* rules to loss allocation conflicts). The second rule applies where the parties are domiciled are different states and each state's local law favors the domiciliary, and holds that the law of the place of injury should control. *Id.* The third rule applies to other split-domicile situations and provides that the governing law will be that of the place of injury, unless "'displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants.'" *Id.* at 281 (quoting *Neumeier*, 286 N.E.2d at 458). A corporation's domicile is the state where it maintains its principal place of business. *See Dorsey v. Yantambwe*, 715 N.Y.S.2d 566, 570 (2d Dep't 2000).

MetLife and Credit Suisse are both domiciled in New York, SJ Order, at 845-46, 847-48, so under the first *Neumeier* rule, New York law would apply to MetLife's fraud claims against Credit Suisse. Lloyds is domiciled in the United Kingdom, *id.* at 847, so either the second or third *Neumeier* rules would apply to Lloyds's fraud claim. Regardless of which rule is used, New York law would be applied because New York is the place of injury. *See Cooney*, 612 N.E.2d at 281. This Court has already found that New York has a substantial interest in these actions, *see* SJ Order, at 851-54, and the application of New York's loss allocation rules would not impair the "smooth working of the multi-state system or produc[e] great uncertainty for litigants." *Cooney*, 612 N.E.2d at 281.

[9] As discussed in Part II.A, *supra*, joint and several liability for MetLife and Lloyds's Section 10(b) claims and MetLife's New Jersey Blue Sky law claim is provided for by statute.

9

In 1986, the New York legislature enacted an exception to joint and several liability in Article 16 of the New York Civil Practice Law and Rules. *See Somner v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1372 n.6 (N.Y. 1992). However this section only applies to non-economic loss, and does not apply to intentional torts, such as fraud. *See* N.Y. C.P.L.R. §§ 1601, 1602(5) (Article 16 does "not apply to actions requiring proof of intent"); *see also Chianese v. Meier*, 774 N.E.2d 722, 724-25 (N.Y. 2002) (the exception in section 1602(5) "applies to prevent defendants who are found to have committed an intentional tort from invoking the benefits of section 1601"); *Somner*, 593 N.E.2d at 1372 n.6 (Article 16's modification of the traditional joint and several liability rule only applies to non-economic loss); 4 Weinstein, Korn & Miller, N.Y. Civ. Prac.: CPLR P 1601.01 (2d ed. 2012) ("[T]he application of CPLR 1601 is limited to non-economic loss for personal injury actions. For economic loss and for any action other than personal injury, the common law rule of joint and several liability remains.").[10]

Accordingly, under New York law, Credit Suisse will be responsible for all of MetLife and Lloyds's damages arising out of their fraud claims, regardless of whether the claims against Poulsen are severed at trial.[11]

---

[10]   New York General Obligations Law § 15-108(a) provides that a judgment against Credit Suisse will be reduced as a result of the prior settlements by the greater of (1) the amount stipulated by the settlement agreement as the settling defendant's share, (2) the amount of consideration paid for the settlement agreement, or (3) the amount of the settling defendant's equitable share of damages. This judgment credit is consistent with the reduction mechanism set forth in the Trustee and Fitch Bar Orders. *See* Part I.B, *supra*.

[11]   As MetLife and Lloyds have previously stated, they are nonetheless opposed to the severance of their claims against Poulsen because liability must be allocated to Poulsen in order to provide MetLife and Lloyds with a full recovery. *See* The New Jersey Plaintiffs' Memorandum in Opposition to the Severance of Defendant Lance Poulsen, No. 12-cv-7263, D.E. 125, Nov. 16, 2012, at 2; No. 12-cv-7264, D.E. 83, Nov. 16, 2012, at 2. However, Credit Suisse has conceded that, under New York's loss allocation rules, the jury can allocate fault to Poulsen on the verdict form, even if MetLife and Lloyds's claims against him are severed. *See* CS Reply, at 9-10 (citing *Gannon Personnel Agency, Inc. v. City of New York*, 57 A.D.2d 538, 540 (1st Dep't 1977); *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 844-45 (2d Cir. 1992)).

## **CONCLUSION**

For all the foregoing reasons MetLife and Lloyds respectfully submit that the Court should apply New York's loss allocation rules to MetLife and Lloyds's common law claims against Credit Suisse at trial.

Dated: December 10, 2012

                                              Respectfully submitted,

                                              KASOWITZ, BENSON, TORRES
                                                 & FRIEDMAN LLP

                                              <u>s/ Harold G. Levison</u>
                                              Harold G. Levison
                                              Cindy C. Kelly
                                              1633 Broadway
                                              New York, NY  10019
                                              (212) 506-1700
                                              hlevison@kasowitz.com
                                              ckelly@kasowitz.com

                                              *Attorneys for Plaintiffs MetLife and Lloyds*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing.  Copies will be mailed via First-Class Mail to those parties to whom electronic notice has not been sent.

                                                s/ Harold G. Levison
                                          Harold G. Levison
                                          KASOWITZ, BENSON, TORRES
                                               & FRIEDMAN LLP
                                          1633 Broadway
                                          New York, NY  10019
                                          (212) 506-1700
                                          hlevison@kasowitz.com