UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CROWN CORK & SEAL COMPANY, INC. MASTER RETIREMENT TRUST, *et al.*, Plaintiffs, v. CREDIT SUISSE FIRST BOSTON CORP., *et al.*, Defendants. | No. 12 Civ. 05803 (JLG) |
| STATE OF ARIZONA, *et al.*, Plaintiffs, v. CREDIT SUISSE FIRST BOSTON CORP., *et al.*, Defendants. | No. 12 Civ. 05804 (JLG) |
| CITY OF CHANDLER, *et al.*, Plaintiffs, v. BANK ONE, N.A., *et al.*, Defendants. | No. 12 Civ. 05805 (JLG) |
| LLOYDS TSB BANK PLC, Plaintiff, v. BANK ONE, N.A., *et al.*, Defendants. | No. 12 Civ. 07263 (JLG) |
| METROPOLITAN LIFE INSURANCE COMPANY, *et al.*, Plaintiffs, v. BANK ONE, N.A., *et al.*, Defendants. | No. 12 Civ. 07264 (JLG) |

**CREDIT SUISSE'S OPPOSITION TO PLAINTIFFS' SUBMISSIONS REGARDING LOSS ALLOCATION ISSUES**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ......................................................................................................1

DISCUSSION ...........................................................................................................2

I.  THE COURT CAN AND SHOULD DEFER THE COMPLEX  CHOICE OF
LAW DETERMINATIONS FOR LOSS ALLOCATION ISSUES ...................................2

    A.  Separate Choice of Law Analyses Are Required for All Loss Allocation
Issues..........................................................................................................2

    B.  Conducting the Choice of Law Analyses  for Loss Allocation Issues is
Premature ...................................................................................................5

II.  THE APPLICATION OF NEW YORK LAW ON JOINT AND SEVERAL
LIABILITY AND ON ALLOCATION OF DAMAGES CAN ONLY BE
DETERMINED AFTER TRIAL ..........................................................................8

    A.  Whether Credit Suisse Can be Held Jointly and  Severally Liable Depends
on the Facts Established at Trial ....................................................................8

    B.  The Court May Apportion Fault to Poulsen as a Severed Defendant...................9

    C.  Credit Suisse's Liability is Not Altered  by Whether Poulsen is
Apportioned Fault .....................................................................................10

    D.  Loss Allocation for the Statutory Claims  is Governed by their Respective
Statutes.....................................................................................................14

CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES AND ADMINISTRATIVE DECISIONS

*Allen v. Great Am. Reserve Ins. Co.,*
    766 N.E.2d 1157 (Ind. 2002) ...................................................................................4

*Chase Manhattan v. Akin, Gump,*
    309 A.D.2d 173 (1st Dep't 2003) ...........................................................................11

*Matter of Colorado Springs Air Crash,*
    867 F. Supp. 630 (N.D. Ill. 1994) ............................................................................4

*Didner v. Keene Corp.,*
    188 A.D.2d 15 (1st Dep't 1993) .............................................................................13

*Edwards v. Erie Coach Lines Co.,*
    17 N.Y.3d 306 (2011) ............................................................................................4, 5

*Gannon Personnel Agency, Inc. v. City of New York,*
    57 A.D.2d 538 (1st Dep't 1977) ......................................................................9, 10, 11

*Gonzalez v. Armac Indus., Ltd.,*
    756 F. Supp. 165 (S.D.N.Y. 1991), *aff'd,* 990 F.2d 729 (2d Cir. 1993) ................12

*In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994,*
    948 F. Supp. 747 (N.D. Ill. 1996) ...........................................................................6

*In re AllState Life Ins. Co. Litig.,*
    CV 09-8162, 2011 WL 5826006 (D. Ariz. Nov. 18, 2011) .....................................4

*In re Brooklyn Navy Yard Asbestos Litig.,*
    971 F.2d 831 (2d Cir. 1992) ...............................................................................9, 11

*Kalikas v. Artale,*
    124 A.D.2d 645 (2d Dep't 1986) .............................................................................8

*Mielcarek v. Knights,*
    50 A.D.2d 122 (4th Dep't 1975) .............................................................................11

*Matter of New York City Asbestos Litig.,*
    188 A.D.2d 214 (1st Dep't 1993), *aff'd* 82 N.Y.2d 821 (1993) ........................11, 12

*P.V. v. Camp Jaycee,*
    197 N.J. 132 (2008) .............................................................................................4, 7

*Ravo v. Rogatnick*,
    70 N.Y.2d 305 (1987) ...................................................................................8

*Schipani v. McLeod*,
    541 F.3d 158 (2d Cir. 2008)........................................................................11

*Sommer v. Fed. Signal Corp.*,
    79 N.Y.2d 540 (1992) ................................................................................11

*Thabault v. Chait*,
    541 F. 3d 512 (3rd Cir. 2008) ......................................................................6

*Whalen v. Kawasaki Motors Corp.*,
    92 N.Y.2d 288 (1998) ................................................................................11

*Williams v. Niske*,
    81 N.Y.2d 437 (1993) .....................................................................11, 12, 14

## STATUTES

15 U.S.C. § 78u-4(f)(2)(A)-(B)(i)......................................................................14

15 U.S.C. § 78u-4(f)(4)(A)-(C)..........................................................................14

15 U.S.C. § 78u-4(f)(7)(A)-(B)..........................................................................14

A.R.S. §§ 12-2506(A) .........................................................................................6

New York Civil Practice Law and Rules
    Article 14 .................................................................................................9, 10

New York General Obligations Law § 15-108 .........................................11, 12, 13

NJ Stat. Ann. § 2A:15-5.2, 5.3(c) .......................................................................6

Restatement (Second) of Conflicts of Law § 6.........................................2, 3, 4, 5, 6, 7

Restatement (Second) of Conflicts of Law § 145 ...........................................2 , 3, 4, 7

Restatement (Second) of Conflicts of Law § 170-173.............................................2

Credit Suisse Securities (USA) LLC and Credit Suisse AG, New York Branch (together, "Credit Suisse") respectfully submit this opposition to (1) the Arizona Noteholder Plaintiffs' (the "Arizona Plaintiffs") Memorandum of Law Regarding Allocation and Bar Order Issues, dated December 10, 2012 ("AZ Mem."); and (2) the Memorandum of MetLife and Lloyds (the "New Jersey Plaintiffs") in Support of the Application of New York's Loss Allocation Rules to their Common Law Claims at Trial, dated December 10, 2012 ("NJ Mem.").

## **INTRODUCTION**

The Arizona Plaintiffs and New Jersey Plaintiffs, while contradicting each other on basic legal positions, ultimately reach the same erroneous conclusion: that New York law should apply to all loss allocation issues. They both reach that conclusion by assuming that the choice of law analysis adopted by the Court for *liability* in its Opinion and Order on Credit Suisse's Motion for Summary Judgment in the Noteholder Actions (the "Summary Judgment Order") somehow mandates the same result for *loss allocation*. Doc. #1520 in Ohio MDL: Case No. 03-MD-01565 (Graham, J.). But that conclusion contradicts the Court's holding in the Summary Judgment Order (a holding conceded by the New Jersey Plaintiffs): that the Restatement (Second) of Conflicts of Law (the "Restatement") directs courts to give separate consideration to each issue in a case.

Applying "separate consideration" to particular issues of loss allocation (such as joint and several liability or judgment credits for settling parties) is a far more complex task than Plaintiffs acknowledge. State interests unique to those particular issues must be considered in deciding which state's law applies. For example, although the Plaintiffs' respective domiciles were of relatively low importance in determining the law to be applied to liability on the state common law claims, a plaintiff's domicile is a key factor in determining the law to be applied to allocation of losses.

Moreover, to the extent New York law does apply to the damages of some plaintiffs, the Arizona Plaintiffs and New Jersey Plaintiffs vastly oversimplify its application here.  In particular, their assumption that Credit Suisse will automatically be jointly and severally liable in the event of a fraud verdict is simply wrong.  The Arizona Plaintiffs' analysis of how New York's judgment credit rule operates is equally incorrect.  New York law does not saddle a non-settling defendant (like Credit Suisse) with full responsibility for the liability of an insolvent co-defendant, but instead spreads that allocation of responsibility to settling co-defendants as well.

The Court need not resolve these issues now.  Indeed, in the absence of a trial record, and without knowing if any of the dozens of plaintiffs will prevail on their respective multiple claims, there is no way to know what or even whether conflicts of law exist.  As such, Credit Suisse respectfully submits, consistent with the Court's suggestion during the December 7, 2012 telephone conference, that a full determination of these conflicts matters be deferred until after trial.

## DISCUSSION

### I.    THE COURT CAN AND SHOULD DEFER THE COMPLEX CHOICE OF LAW DETERMINATIONS FOR LOSS ALLOCATION ISSUES[1]

#### A.    Separate Choice of Law Analyses Are Required for All Loss Allocation Issues

As this Court held in the Summary Judgment Order, "[t]he Restatement instructs courts to give *separate consideration to each issue in a case*."  Summary Judgment Order at 15

---

[1] Credit Suisse employs the term "loss allocation" in this brief in a manner similar to that used by the New Jersey Plaintiffs in their brief: to refer to legal issues concerning how to assess and allocate damages, assuming some finding of liability on one or more common law claims.  "Loss allocation" issues include matters such as joint and several liability and the background legal rules for allocating judgment credits for settlements, as well as other matters contained in Restatement §§ 170-173.  The use of the term "loss allocation" is for simplicity and clarity and is not intended to imply the application of any particular state's law.

(emphasis added), *citing* Restatement § 145 cmt. d; *id.* at 16-17.  The Court's holding stems from the plain language of Restatement § 145 and comment (d), as well as the Restatement's direction that courts evaluate contacts as they relate to "state interest" factors.  Those factors include "the relevant policies of other interested states and the relative interests of those states in the determination of the *particular issue*," as well as "the basic policies underlying *the particular field of law*."[2]  Restatement § 6 (emphasis added).  Plaintiffs concede that the Restatement applies to the conflicts of law analysis of loss allocation in this case.[3]  From the Restatement, it is clear that the Court cannot simply apply its prior choice of law analysis concerning liability for common law tort claims to the separate and discrete issues of loss allocation.

The Arizona Plaintiffs take the untenable position that this Court's resolution of choice of law for the common law tort claims (under Restatement § 145) somehow automatically dictates the results as to the allocation of losses.  They cite no authority for their position because none exists.  The Arizona Plaintiffs ignore the plain language of § 145, which requires an analysis of

---

[2]  Section 6 of the Restatement provides "the factors relevant to the choice of the applicable rule of law":

    (a)  the needs of the interstate and international systems,
    (b)  the relative policies of the forum,
    (c)  the relevant policies of other interested states and the relative interests of those states
in the
        determination of the particular issue,
    (d)  the protection of justified expectations,
    (e)  the basic policies underlying the particular field of law,
    (f)  certainty, predictability and uniformity of result, and
    (g)  ease in the determination and application of the law to be applied.

[3]  *Cf.* AZ Mem. at 2-7; NJ Mem. at 6-8.  Plaintiffs all contend that the Court should apply the conflicts of law rules of the respective transferor forums, *i.e.*, New Jersey and Arizona. Although the application of transferor choice of law rules is not always appropriate, even in the case of a convenience transfer, Credit Suisse does not object to this application here.  Plaintiffs and Credit Suisse are also in agreement that both New Jersey and Arizona choice of law rules adopt the Restatement, and hence the Court may follow the guidance of the Restatement in analyzing choice of law issues for all the transferred cases.

the state interest factors in § 6 "with respect to *that* issue." *Id.* at § 145 (emphasis added).  They

also ignore the plain language of § 6, which mandates a separate analysis for loss allocation

issues because "the relevant policies" are distinct. *Id.* at § 6(2)(c).  And critically, they ignore

the Restatement § 145 comment relied upon by the Court in its Summary Judgment Order, which

requires that each legal issue receive "separate consideration."  Summary Judgment Order at 15.

The New Jersey Plaintiffs, in contrast, correctly recognize that the Court's analysis of

§ 145's factors for the substantive common law claims "is not necessarily determinative for all

loss allocation issues, as choice of law issues are generally analyzed on an issue-by-issue basis."

NJ Mem. at 7.  Cases from Arizona, New Jersey, and other states which have adopted the

Restatement all confirm that conclusion. *See, e.g.*, *P.V. v. Camp Jaycee*, 197 N.J. 132, 143

(2008) ("The Second Restatement assessment takes place on an issue-by-issue basis."); *In re*

*AllState Life Ins. Co. Litig.*, CV 09-8162, 2011 WL 5826006, at *2 (D. Ariz. Nov. 18, 2011)

(recognizing that it is "sometimes appropriate, therefore, to apply one state's laws to a

substantive cause of action in a case and apply a different state's laws to that case's contribution

claim."); *Matter of Colorado Springs Air Crash*, 867 F. Supp. 630, 633-36 (N.D. Ill. 1994)

(applying the Restatement to conduct two separate § 145 analyses resulting in application of

different law to different loss allocation issues.).

Finally, in this complex action with individual claims brought by otherwise unrelated

plaintiffs suffering different losses, and implicating many states' different policies on loss

allocation, Restatement § 145 and § 6 must be applied separately for each plaintiff to account for

those varying relevant circumstances. *See, e.g.*, *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d

1157, 1162 (Ind. 2002) (noting that under the Restatement, choice of law "may differ between

defendants as to a single count"); *see also Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306, 320

(2011) (performing a choice of law analysis for loss allocation issues plaintiff-by-defendant because "'[c]ontacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws.'") (citation omitted).[4]

### B. Conducting the Choice of Law Analyses for Loss Allocation Issues is Premature

The Court need not and ought not resolve the remaining conflicts of law questions at this stage in the litigation. Loss allocation takes place after a finding of liability and hence is properly addressed and resolved after trial. Indeed, resolving these issues now would be premature as it is not yet clear which plaintiffs, if any, will ultimately prevail on which claims.

Although conducting a full choice of law analysis for loss allocation is premature, it is possible to identify some of the myriad issues that are likely to bear on any ultimate choice of law decisions as to allocations in this action. For example, the Restatement requires that a choice of law analysis take into account the "policies underlying the particular field of law" at issue. Restatement § 6. Indeed, this Court performed exactly that analysis in determining which law would govern liability. In so doing, the Court focused on each state's interest in regulating the *conduct* of Credit Suisse, logically concluding that "New York has the greatest interest in regulating the securities transactions that occurred here." *See* Summary Judgment Order at 17. In that specific context, the Court cited the Restatement provision, which notes that "it is fitting that the state whose interests are most deeply affected should have its local law applied," and with respect to the specific issue of whether Credit Suisse made false representations concluded,

---

[4] Although New York does not strictly follow the Restatement, the reasoning of its highest court is just as applicable to the Restatement context. The *Edwards* court reasoned that aggregating contacts in a loss allocation context would permit plaintiffs to forum shop for the most favorable damages and loss allocation rules by choosing which potential defendants to sue. *Edwards*, 17 N.Y.3d 306, 329 n.10. The exact same risk exists with respect to choice of law analysis for loss allocation under the Restatement.

"New York has the greatest interest."  Summary Judgment Order at 16, *citing* Restatement §

6(2)(c) and cmt. f.  However, that conduct-centered analysis does not apply to loss allocation

where the analysis focuses on the *losses* suffered by the plaintiffs, not the *conduct* engaged in by

the defendant.

Allocation of loss implicates different state interests than those applicable to liability and

therefore necessitates a distinct analysis to determine "the state whose interests are most deeply

affected."  Restatement § 6 cmt. f.  In contrast to a liability determination, typically the plaintiff's

domicile is a determinative factor in loss allocation because the plaintiff's domicile is the place

where the loss is sustained.  *In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 948

F. Supp. 747, 758 (N.D. Ill. 1996) ("Applying the law of the injured person's domicile to issues

of compensatory damages advances the principles of predictability and the protection of justified

expectations set out in Second Restatement § 6"); *see also Thabault v. Chait*, 541 F. 3d 512 (3rd

Cir. 2008) (applying joint-and-several liability law of corporate defendant's domicile).  Other

state interest factors may also point to a plaintiffs' domicile-centered analysis for loss allocation

issues.  For example, Arizona's state policy is that recovery in tort cases is on the basis of several

(not joint) liability.  A.R.S. §§ 12-2506(A).  Yet, a plaintiff in this case, the Arizona Treasurer –

an officer of the state – asks this Court to apply a joint and several liability rule that contradicts

his state's own policies.  Arizona's Treasurer cannot seriously claim a legitimate interest in

obtaining joint and several liability against Credit Suisse, who does business and was sued in

Arizona, when his state's policy unequivocally rejects joint and several liability.

Similarly, New Jersey law limits recovery and does not recognize joint and several

liability unless a defendant is found to be more than 60% responsible.  NJ Stat. Ann. § 2A:15-

5.2, 5.3(c) (West).  Thus, to the extent that one or more plaintiffs have meaningful contacts with

6

New Jersey, it may be necessary to consider New Jersey's reasons for its policy and, in particular, whether it is appropriate for New Jersey entities to recover greater amounts than those entities would have otherwise recovered under New Jersey law. For example, the loss allegedly suffered by MetLife was sustained by its Asset-Backed Securities unit in New Jersey. Summary Judgment Order at 16. Moreover, MetLife received alleged misrepresentations and purportedly relied to its detriment on them in New Jersey. *Id.* at 16-17. Despite those New Jersey contacts, the Court correctly applied the law of New York to the common law fraud claim because, for that analysis, the determinative contact was the place the alleged conduct occurred, namely New York. *Id.* at 17. For the allocation of loss, the place where the loss was initially sustained (New Jersey) becomes much more significant, and the place where the underlying conduct occurred less so. In fact, the New Jersey Plaintiffs expressly acknowledge that the Court's decision to apply New York law to common law tort claims "is not necessarily determinative for all loss allocation issues, as choice of law issues are generally analyzed on an issue-by-issue basis." NJ Mem. at 7, *citing P.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008).[5] Despite that admission, the New Jersey Plaintiffs nevertheless contend that the analysis is identical to the one conducted by the Court for issues of substantive law. *Id.* at 6. Their assumption – that "application of section 145(2) to the issue of joint and several liability should lead to the same result" as did the substantive choice of law analysis – is misplaced and disregards the crucial state interests that Restatement § 6 requires courts to consider. *Id.* at 7.

---

[5] The Arizona Plaintiffs, as noted above, erroneously disregard the plain language of the Restatement and contend that no analysis is necessary. AZ Mem. at 6.

These are but a few examples of the conflict issues concerning loss allocation that make clear that a new and separate conflicts analysis will be required after trial to determine the rules governing loss allocation as to any prevailing plaintiff.

## II.   THE APPLICATION OF NEW YORK LAW ON JOINT AND SEVERAL LIABILITY AND ON ALLOCATION OF DAMAGES CAN ONLY BE DETERMINED AFTER TRIAL

Even if this Court ultimately finds that New York's law on loss allocation applies to some plaintiffs, it will need to resolve a number of additional legal issues that Plaintiffs fail to address. First, the Court cannot properly allocate damages unless and until Credit Suisse is found jointly and severally liable with Poulsen as to some plaintiffs, and that finding depends on specific facts and circumstances. Second, assuming Poulsen is apportioned fault as a severed party – an outcome clearly permitted, but not mandated, by New York law – this Court must determine how his share of fault should be allocated between settling and non-settling parties under New York law. Third, Plaintiffs' statutory claims are governed by separate, statute-specific loss allocation schemes, which may have different methods of allocating fault and calculating judgment credits for settled parties. While Credit Suisse respectfully submits that resolution of these issues is premature, it nonetheless addresses them below to highlight the issues the Court may ultimately need to resolve in the event that Credit Suisse is found to have some liability.

### A.   Whether Credit Suisse Can be Held Jointly and Severally Liable Depends on the Facts Established at Trial

Under New York law, joint and several liability requires that two defendants either act concurrently or in concert to produce the same injury, or cause a single, indivisible injury. *See Ravo v. Rognick*, 70 N.Y.2d 305, 309-11 (1987). Where defendants acted independently and an injury is reasonably divisible, New York courts do not impose joint and several liability. *See,*

*e.g.*, *Kalikas v. Artale*, 124 A.D.2d 645, 646 (2d Dep't 1986).  Whether Credit Suisse might be

jointly and severally liable with Poulsen will thus depend on the evidence presented at trial

concerning the interaction of the defendants and the nature of the injuries with respect to the

claims asserted by each separate plaintiff.  Contrary to the Plaintiffs' assumption that Credit

Suisse's joint and several liability follows from their own *ipse dixit*,[6] New York law does not

permit such a finding absent a trial record and specific jury verdicts that support it.

### B.    The Court May Apportion Fault to Poulsen as a Severed Defendant

Based on the possibility that Credit Suisse and Poulsen could be jointly and severally

liable as to some of Plaintiffs' claims, the Arizona Plaintiffs repeat their argument opposing

Poulsen's severance in the mistaken belief that Poulsen's presence in this trial is necessary for a

jury to make an allocation of fault to him.[7]  In fact, New York law is unequivocal in holding that

a jury may apportion fault to a severed party.  *See Gannon Personnel Agency, Inc. v. City of New*

*York*, 57 A.D.2d 538, 539 (1st Dep't 1977) (ordering that the jury "apportion the damages among

all the defendants held liable, including the severed defaulting defendant"); *In re Brooklyn Navy*

*Yard Asbestos Litig.*, 971 F.2d 831, 844-45 (2d Cir. 1992) (approving the jury's attribution of

fault shares "to various . . . nonparties.").[8]  Thus, it is not surprising that the Arizona Plaintiffs

cite no authority for their argument to the contrary.  Instead, the Arizona Plaintiffs resort to

misstating Article 14 of the New York Civil Practice Law and Rules, which provides in relevant

part:

---

[6] *See, e.g.*, AZ Mem at 1-2; NJ Mem. at 2.

[7] *Cf.* Credit Suisse's Reply to Plaintiffs' Submissions Regarding the Participation of Defendant Lance Poulsen at Trial, dated November 20, 2012 ("CS Mem."), at 10.

[8] The New Jersey Plaintiffs do not argue otherwise and indeed concede this point.  NJ Mem. at 10 n.11.

> [P]ersons who are subject to liability for damages for the same
> personal injury, injury to property or wrongful death, may claim
> contribution among them *whether or not an action has been
> brought or a judgment has been rendered against the person* from
> whom contribution is sought.

*Compare* N.Y. C.P.L.R. 1401 (emphasis added), *with* AZ Mem. at 9 (omitting reference to

contribution's availability even absent judgment). Article 14 obviously does not prevent

allocating fault to Poulsen as a severed party and is therefore not an obstacle to his severance.

Although Poulsen's severance poses no possible threat to the Plaintiffs' asserted rights to

joint and several recovery, his presence at trial, possibly as a *pro se* party, as he recently

requested, Verified Motion to Withdraw as Counsel for Defendant Lance Poulsen, dated

December 21, 2012, *attaching* Affidavit of Lance Poulsen, would pose unacceptable risks of

prejudice to Credit Suisse and would virtually guarantee that an already complex and lengthy

trial would be unmanageable, for the reasons previously explained in Credit Suisse's brief on

severance.

### C.   Credit Suisse's Liability is Not Altered by Whether Poulsen is Apportioned Fault

Although the Court can direct Poulsen's inclusion in the jury's apportionment of fault,

inclusion is likely to prove unnecessary because Credit Suisse's allocation of fault should not

change even if Poulsen is included in the apportionment.[9] While it is premature to resolve now

the hypothetical apportionment of fault to Poulsen, the relevant law is reviewed below to point

out the errors in Plaintiffs' oversimplified analysis.

---

[9] Credit Suisse has no objection to Poulsen's inclusion in the jury's apportionment of fault. Because all parties (other than the Arizona Plaintiffs and Poulsen) agree that the Court may direct such an apportionment following the close of evidence, and that doing so obviates the need to include Poulsen in this trial, the Court can sever Poulsen now and then decide apportionment issues at the appropriate time.

Plaintiffs contend that under New York law, if judgment is entered against Credit Suisse, and Credit Suisse is found jointly and severally liable with Poulsen, Credit Suisse will necessarily be liable for Poulsen's entire share of fault. *Cf.* AZ Mem. at 12-13; NJ Mem. at 9-10. That contention is flatly incorrect. As the Appellate Division, First Department held in *Gannon*, the share of an insolvent, severed defendant should be assessed and then divided "among the other defendants in relation to their proportionate shares of the remaining liability." *Id.* at 540.

The *Gannon* holding applies with equal force to settled defendants under New York General Obligations Law § 15-108, which "was enacted 'to ensure that nonsettling tort-feasors are not required to bear more than their equitable share of liability.'" *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008) (citation omitted); *Williams v. Niske*, 81 N.Y.2d 437, 443 (1993) (Section 15-108 "is concerned . . . with assuring that a nonsettling defendant does not pay more than its equitable share.").[10] The objective of § 15-108 is that "[p]laintiffs should be fairly compensated, but nonsettling defendants should not bear more than their fair share of a plaintiff's loss." *Whalen v. Kawasaki Motors Corp.*, 92 N.Y.2d 288, 292 (1998). In particular, § 15-108 "was enacted to ensure that the nonsettling tort-feasor not be burdened with more than his equitable share because of the fact that another tort-feasor had chosen to settle." *Mielcarek v. Knights*, 50 A.D.2d 122, 126 (4th Dep't 1975).[11]

---

[10] Section 15-108 governs judgment credits for settling co-defendants under New York law. As Plaintiffs concede, the bar orders entered in connection with certain settlements in this action contemplate a judgment credit that guarantees a reduction of any verdict against Credit Suisse equal to the greater of the settlement amounts or shares of fault attributed to settling defendants. *See* AZ Mem. at 9; NJ Mem. at 4. The bar orders do not alter any otherwise applicable provision of state law.

[11] Courts interpreting New York law have applied a different analysis to the reallocation of shares apportioned to jurisdictionally unreachable entities (including bankrupts subject to stays of litigation) than to ordinary insolvents because a typical § 15-108 allocation cannot apply to the former. *See In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 845 (2d Cir. 1992) ("affirm[ing] the district court's reallocation of bankrupts' and nonparties' shares to the non-settling defendants"); *Matter of New York City Asbestos Litig.*, 188 A.D.2d 214, 224 (1st Dep't

Furthermore, § 15-108 "cut[] off contribution rights against the settling tortfeasor."

*Chase Manhattan v. Akin, Gump*, 309 A.D.2d 173, 179 (1st Dep't 2003).  Because contribution

was intended to enable "[a]ny tortfeasor who pays more than its fair share of a judgment . . . [to]

recover the excess from the others," *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 556 (1992), §

15-108 thus eliminated Credit Suisse's right to sue the settling defendants for their share of the

fault allocated to Poulsen.  But in exchange for the elimination of a non-settling defendant's

contribution right, § 15-108 provided a "quid pro quo" of a judgment credit of equal value.

*Gonzalez v. Armac Indus., Ltd.*, 756 F. Supp. 165, 168 (S.D.N.Y. 1991), *aff'd*, 990 F.2d 729 (2d

Cir. 1993).  Thus, to fulfill the statute's purpose, the § 15-108 credit must replace Credit Suisse's

lost contribution right by offsetting the settling defendants' share of Poulsen's fault allocation.

*See Williams v. Niske*, 81 N.Y.2d 437, 443 (N.Y. 1993).  This rule ensures equitable sharing of

fault among tortfeasors while avoiding imposition of the insolvent entity's entire share of fault

on a single non-settling defendant as a penalty for exercising its right to trial.

Reallocation of an insolvent's share to both settling and non-settling parties under § 15-

108 properly reflects the economic realities of settlement.  Plaintiffs negotiate settlement with the

understanding that each defendant is at risk for that defendant's own equitable share plus its

equitable portion of the insolvent's fault, *i.e.*, for the total amount they would have to pay if

found liable at trial.  That is exactly the understanding Plaintiffs had in this action, where

Poulsen's insolvency was well-known in light of the United States government's seizure of his

---

1993) ("the share of damages attributable to bankrupt defendants should be allocated only among
the nonsettling defendants"), *aff'd* 82 N.Y.2d 821 (1993).  As the Second Circuit explained,
"untouchable tortfeasors fall into two groups: *bankrupts*, who are protected from judgment by
the automatic stay . . . and *nonparties*, such as nondiverse tortfeasors, who would be defendants
but for their jurisdictional unobtainability."  971 F.2d at 844 (emphasis added).  Poulsen is, of
course, a party to this litigation, and he is not subject to any bankruptcy-related stay.

assets, his incarceration, his indictment on a criminal forfeiture count seeking $1.9 billion, and liability for restitution in excess of that sum.

Although the Arizona Plaintiffs are concerned that they might not recover 100% of their losses at trial, that possibility is simply an inevitable by-product of their voluntary decision to compromise their claims against over a dozen other defendants for amounts less than what they otherwise might have recovered. To the extent a plaintiff settled too cheaply, that risk should be borne by that plaintiff and *not* the non-settling defendant, because § 15-108 "is unambiguous in placing the risk of recovery on the settling plaintiff." *Matter of New York City Asbestos Litig.*, 188 A.D.2d 214, 224 (1st Dep't 1993). Put simply, the Arizona Plaintiffs want to have their cake and eat it too: they want to get the benefit of sweetheart settlements to fund their own case and hedge their trial risks, cut off all contribution rights of Credit Suisse to facilitate those settlements, saddle Credit Suisse with all of Poulsen's share of fault to ensure full compensation to themselves despite their compromises with others, and yet block Credit Suisse from receiving credit for portions of Poulsen's fault they otherwise would have been able to recover from settling defendants via (now prohibited) contribution claims. This outcome, contrary to the authorities cited above (and unsupported by any authority cited by the Plaintiffs), is precisely the outcome that § 15-108 prohibits.

*First*, it would guarantee a prohibited double recovery for Plaintiffs. *See, e.g.*, *Didner v. Keene Corp.*, 188 A.D.2d 15, 21 (1st Dep't 1993) (Section 15-108(a)'s credit was enacted "[t]o preclude the possibility of double recovery for a single injury"). This is because Plaintiffs would receive the *entire* share of the insolvent Poulsen's fault from Credit Suisse, even though the settled defendants have already paid amounts reflecting their own degree of fault *and* their percentage share of Poulsen's fault allocation, as potential jointly and severally liable co-

13

defendants. *Second*, there would be a "non-settlor pays all" penalty if Credit Suisse were stuck with Poulsen's entire share. Indeed, the Plaintiffs' interpretation would transform § 15-108 from providing compensation to non-settling defendants for loss of contribution rights into a coercive tool for bullying defendants into settlement once other defendants have settled.

The Arizona Plaintiffs hypothesize that a jury might find Poulsen 40%, Credit Suisse 30%, and the settling parties 30% culpable. *See* AZ Mem. at 12-13. Where Poulsen is not apportioned fault, the Arizona Plaintiffs then correctly note that Credit Suisse will be apportioned 50% and the settlors 50%, as the jury views Credit Suisse and the settlors as equally at fault. However, the Arizona Plaintiffs assume – without any factual or legal support – that where the insolvent Poulsen is apportioned fault, it should then be reallocated to Credit Suisse alone, resulting in a dramatically different liability for Credit Suisse than where Poulsen is not apportioned fault. Plaintiffs' position is fundamentally flawed. In the Arizona Plaintiffs' hypothetical where Poulsen is apportioned fault of 40%, it would be equitably reallocated to Credit Suisse and the settlors according to their shares – resulting in 50% for Credit Suisse and 50% for the settlors. This allocation is identical to where Poulsen is not apportioned fault, and Credit Suisse's damages are not altered by the inclusion of Poulsen. Any other result would violate New York law, which mandates that "a nonsettling defendant does not pay more than its equitable share." *Williams*, 81 N.Y.2d at 443.

### D.  Loss Allocation for the Statutory Claims is Governed by their Respective Statutes

As the New Jersey Plaintiffs concede, loss allocation issues on the New Jersey Plaintiffs' § 10(b) and New Jersey Blue Sky law claims – and all other statutory claims of Plaintiffs – are provided for by statute. NJ Mem. at 4-5. For instance, § 10(b) claims are governed by the loss allocation scheme of the Private Securities Litigation Reform Act ("PSLRA"). Although some

features of the PSLRA scheme are discussed in the New Jersey Plaintiffs' brief, other relevant provisions of the statute are overlooked.  While these matters need not be resolved at this time, they include the elimination of joint and several liability, except for those who "knowingly" commit a violation of the securities laws, 15 U.S.C. § 78u-4(f)(2)(A)-(B)(i); a judgment credit for non-settling defendants that reduces any verdict by the greater of the settlement amounts or the settlors' percentage shares of responsibility, 15 U.S.C. § 78u-4(f)(7)(A)-(B); and the reallocation of shares of a judgment that are not collectible against the liable individual, 15 U.S.C. § 78u-4(f)(4)(A)-(C).

## CONCLUSION

For the foregoing reasons, Credit Suisse respectfully requests that the Court defer the

resolution of these complex loss allocation issues until the appropriate juncture after trial.


Dated:   New York, New York
         December 28, 2012

Respectfully submitted,

COOLEY LLP

By: _____
     William J. Schwartz (WS-8462)
     Jason Koral (JK-1044)
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 479-6000

-and-

BINGHAM MCCUTCHEN LLP

Jeffrey Q. Smith (JS-7435)
Steven G. Brody (SB-6859)
Susan F. DiCicco (SD-8013)
Laila Abou-Rahme (LA-8962)
399 Park Avenue
New York, New York 10022
Tel: (212) 705-7000

*Attorneys for Defendants*
*Credit Suisse Securities (USA) LLC and*
*Credit Suisse AG, New York Branch*

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2012 the foregoing was served upon all parties, except Rebecca Parrett, Donald Ayers and E&D Investments, Inc., by electronic delivery through the Court's ECF document filing system.  Defendants Rebecca Parrett, Donald Ayers and E&D Investments, Inc. were served by first-class mail at the addresses set forth below.

Donald H. Ayers
No. 34195-018
FCI Coleman Low
Federal Correctional Institution
P.O. Box 1031
Coleman, FL 33521

Rebecca S. Parrett
No. 85489-008
FCI Dublin
Federal Correctional Institution
5701 8th Street – Camp Parks
Dublin, CA 94568

/s/ Gabriel Rauterberg
Attorney at Law