UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CROWN CORK & SEAL COMPANY, INC. MASTER RETIREMENT TRUST, *et al.*, <br>                    Plaintiffs, <br>         v. <br> CREDIT SUISSE FIRST BOSTON CORP., *et al.*, <br>                    Defendants. | Case No. 12-cv-05803-JLG <br> Judge James L. Graham[*] |
| STATE OF ARIZONA, *et al.*, <br>                    Plaintiffs, <br>         v. <br> CREDIT SUISSE FIRST BOSTON CORP., *et al.*, <br>                    Defendants. | Case No. 12-cv-05804-JLG <br> Judge James L. Graham |
| CITY OF CHANDLER, *et al.*, <br>                    Plaintiffs, <br>         v. <br> BANK ONE, N.A., *et al.*, <br>                    Defendants. | Case No. 12-cv-05805-JLG <br> Judge James L. Graham |
| LLOYDS TSB BANK PLC, <br>                    Plaintiff, <br>         v. <br> BANK ONE, N.A, *et al.*, <br>                    Defendants. | Case No. 12-cv-07263-JLG <br> Judge James L. Graham |
| METROPOLITAN LIFE INSURANCE COMPANY, *et al.*, <br>                    Plaintiffs, <br>         v. <br> BANK ONE, N.A., *et al.*, <br>                    Defendants. | Case No. 12-cv-07264-JLG <br> Judge James L. Graham |

<u>Opinion and Order</u>

This matter is before the court to determine whether to bifurcate the issue of apportionment of liability from other liability issues. The court raised *sua sponte* the possibility of bifurcation in advance of a January 18, 2013 status conference with the parties, seeking responses to the following proposal:

> In the first stage of the trial, the jury would determine whether Credit Suisse committed fraud and violated federal and state securities law in connection with the

---

[*] The Honorable James L. Graham, United States Senior District Judge for the Southern District of Ohio, presiding pursuant to intercircuit assignment to the Southern District of New York.

1

>notes purchased by plaintiffs. The jury would be required to make specific findings as to Credit Suisse's scienter. In the second stage, if necessary, the same jury would hear Credit Suisse's defense, on which it bears the burden of proof, that other persons caused or contributed to plaintiffs' loss.

See doc. 125. The issue of bifurcation was discussed during the conference and the parties were instructed to submit briefs, which they have done.

With the clarification that the first phase of the trial would include the jury's findings on damages, including the predicate question of whether plaintiffs are entitled to punitive damages, plaintiffs state no objection to the court's proposed bifurcation. Credit Suisse opposes bifurcation, but states that if the court does bifurcate, a third phase should be added in which the amount of punitive damages is separately determined. For the reasons stated below, the court finds that it is appropriate to bifurcate the primary issues of liability and the issue of apportionment of liability, as well as add a third phase as to the amount of any punitive damages award.

## I.     Rule 42(b)

Under Federal Rule of Civil Procedure 42, a court may bifurcate the trial of issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "[B]ifurcation requires the presence of only one of these conditions," Ricciuti v. New York City Transit Authority, 796 F.Supp. 84, 86 (S.D.N.Y. 1992), and the decision to bifurcate a trial rests "firmly within the discretion of the trial court." Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir. 1984). "On a case-by-case basis, courts should examine, among other factors, whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion." Lewis v. City of New York, 689 F.Supp.2d 417, 429 (E.D.N.Y. 2010) (citations omitted).

## II.    Discussion

In the court's view, eliminating the likelihood of juror confusion is the foremost factor in support of bifurcating the trial. The parties estimate that the trial in this securities fraud litigation will last six to eight weeks and will include 80 to 100 witnesses and hundreds, if not thousands, of documents. The parties expect to call numerous experts, and some of the concepts presented to the jury will be complex.

Bifurcating the primary issues of Credit Suisse's liability and the issue of apportionment of liability will likely aid the jury's comprehension of this case. Credit Suisse, if found liable on plaintiffs' securities fraud and common law claims, is entitled to request an apportionment of liability under the court's bar orders, see 15 U.S.C. § 78u-4(f)(7), and under N.Y. Gen Obl. Law § 15-108. Credit Suisse can support its request by presenting evidence of the alleged wrongdoing of the defendants who have settled with plaintiffs. "Where a plaintiff at trial establishes the non-settling defendant's liability, the burden shifts to that defendant to establish the equitable share attributable to the settling tortfeasor so as to reduce the portion of damages for which the non-settling defendant is responsible." Maione v. Pindyck, 821 N.Y.S.2d 110, 112 (N.Y. App. Div. 2006); see also In re CBI Holding Co., Inc., 419 B.R. 553, 574-75 (S.D.N.Y. 2009) (stating that a defendant, against whom primary liability has been established, may seek a judgment reduction under § 15-108).

Credit Suisse intends to introduce a great deal of evidence concerning the alleged misconduct of the many companies and individuals who settled with plaintiffs. The settling defendants are diverse parties who played various roles in National Century's operations, including auditors, credit rating agencies, an equity investor, indenture trustees, a law firm, outside directors, and an underwriter. The court, while reserving judgment on admissibility issues, believes that much of the evidence concerning the settling parties' conduct is likely not relevant to plaintiffs' case in chief against Credit Suisse. Hearing such evidence about the conduct of other parties could confuse the jury, add greatly to the amount and type of factual matters the jury would have to try to remember, and perhaps cloud the jury's judgment as to whether plaintiffs have proved their claims against Credit Suisse. If the court bifurcates the trial, this evidence would be saved for the second phase, where the jury's attention will be fully focused on the apportionment issue. Bifurcation will thus allow the jury to tackle two formidable tasks – determining the liability of Credit Suisse and the apportionment of liability – one at a time. See Union Carbide Corp. v. Montell N.V., 28 F.Supp.2d 833, 837 (S.D.N.Y. 1998) (holding that bifurcation was appropriate in an antitrust trial predicted to last eight weeks because "[c]onfronting one complex set of issues at a time is likely to reduce the possibility of jury frustration and confusion.").

Bifurcation will also serve the interests of judicial economy. Bifurcation may be appropriate where "the two phases involve[] different types of evidence." Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir. 1984), or where "the litigation of the first issue might eliminate the need to litigate the second issue," Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999). Both of these

considerations are present here.  The evidence to be submitted against Credit Suisse (relating to its alleged knowledge and participation in the National Century fraud and to its interactions with plaintiffs) is different in nature from the evidence about the settling defendants, who were positioned differently than Credit Suisse in their roles at National Century and in their relationships with plaintiffs.  Moreover, litigation of the primary issues of Credit Suisse's liability could eliminate the need to litigate the apportionment issue.  Credit Suisse has designated 26 fact witnesses from the settling parties, as well as experts to testify as to audit and trustee issues.  Though the parties do not estimate how many days examination of these witnesses could take, it is fair to say that it will take a considerable amount of time.  Using the rule of thumb of two witnesses per day that Credit Suisse has used to estimate the overall trial length, the court would estimate that this phase of the trial could take at least two weeks.  The following two scenarios would make the second phase of the trial unnecessary: (1) the jury finds in favor of Credit Suisse on all claims in phase one of the trial, or (2) the jury finds in favor of the plaintiffs as to at least one claim, but Credit Suisse elects not to pursue an apportionment defense and instead takes the judgment credit of the amounts paid by the settling defendants.

Credit Suisse argues that bifurcation is not permitted under Schipani v. McLeod, 541 F.3d 158, 162 (2d Cir. 2008), where the court stated that "liability should be apportioned during the liability phase, not the damages phase."  The court made clear that "apportionment of fault is a component of the liability determination" under New York law because it is "necessarily requires the factfinder to determine what caused plaintiff's injury." Id. at 163 (internal quotation marks omitted).

The court does not believe that Schipani precludes bifurcation here.  In that case, persons injured in a three-vehicle accident brought suit against multiple defendants.  After settling with all but one defendant, plaintiffs moved for summary judgment on their negligence claim against the remaining defendant.  The trial court granted summary judgment to plaintiffs and referred the matter to a magistrate judge for determination of damages.  Only after the entry of summary judgment did defendant seek an apportionment of liability under N.Y. Gen Obligation. Law § 15-108.  The Second Circuit held that "a defendant forfeits its right under § 15-108 to an offset in the amount of the settling codefendant's equitable share if it waits until after summary judgment on liability to seek an apportionment."

As plaintiffs correctly note, Schipani's holding did not concern a decision whether to bifurcate. The holding was simply that a party could not seek an apportionment for the first time after the entry of summary judgment. This court is sensitive to the fact that apportionment is a component of the overall liability issue. However, Rule 42(b) affords the court the flexibility to bifurcate the trial of issues within a claim. "'Rule 42(b) is sweeping in its terms and allows the district court, in its discretion, to grant *a separate trial of any kind of issue in any kind of case*.'" Chevron Corp. v. Donziger, 800 F.Supp.2d 484, 491 (S.D.N.Y. 2011) (emphasis added) (quoting 9A Charles Alan Wright, et al., Federal Practice and Procedure: Civil 3d § 2398, at 126 (2008)); see also 8-42 Moore's Federal Practice – Civil § 42.20[5][a] ("Not only does the court have discretion to bifurcate claims or issues traditionally considered to be divisible, such as liability and damages, but also, to separate for trial virtually any other issue that it thinks proper."). The court finds here that separating the sub-issue of apportionment, prior to a judgment entry, will promote juror comprehension and judicial economy. In the first stage of the trial, the jury will determine whether Credit Suisse's conduct was a "substantial factor" in causing plaintiffs' losses. Clinton v. Brown & Williamson Holdings, Inc., 652 F.Supp2d 528, 536 (S.D.N.Y. 2009); see also Curiale v. Peat, Marwick, Mitchell & Co., 630 N.Y.S.2d 996, 1002 (N.Y. App. Div. 1995) (holding that to establish fraud, misrepresentations need not have been the exclusive cause of plaintiff's losses; it is sufficient that they were a substantial factor in inducing plaintiff to act). In the second stage, if necessary, the jury will determine Credit Suisse's responsibility for plaintiffs' losses in relation to the responsibility of other alleged wrongdoers.

Credit Suisse raises concerns about its ability to defend itself on causation-related issues during the first phase of the trial. The court is not persuaded that bifurcation will prejudice Credit Suisse's defense at trial. As an example, the reliance element of plaintiffs' fraud claims is "tied to causation." Stoneridge Inv. Partners, LLC v. Scientific Atlanta, 552 U.S. 148, 160 (2008); see also OSJ, Inc. v. Work, 710 N.Y.S.2d 666, 668 (N.Y. App. Div. 2000) (reliance requires a "causal connection" between the misrepresentation and the injury). Credit Suisse will be entitled to demonstrate during the first phase of the trial that plaintiffs did not rely on alleged misrepresentations by Credit Suisse in making their investment decisions – that even if plaintiffs received representations from Credit Suisse, other factors caused plaintiffs to purchase notes. The court is concerned that without bifurcation, the jury would be confused by the significant amount of evidence Credit Suisse intends to present about the actions of various other actors in National

5

Century's operations. Much of this evidence is not directed at issues of plaintiffs' reliance but is relevant only to the issue of apportionment of fault. See N.Y. Gen Oblig. Law § 15-108(a) (requiring a determination of each "released tortfeasor's equitable share of the damages"). The court believes that the jury's comprehension of reliance-related issues and apportionment-related issues will be improved if the matters are bifurcated.

With no objection from plaintiffs, the court grants Credit Suisse's request for a separate trial phase to determine the amount of any punitive damages award. See Lightning Bolt Prods, Inc. 861 F.2d 363, 373-74 (2d Cir. 1988) (explaining the customary practice of bifurcating determination of a punitive damages amount).

On a final note, plaintiffs request the inclusion of a preliminary instruction which informs the jury that the trial will be conducted in phases and cautions them not to speculate about the effect that the outcome of the first phase will have on further phases. Plaintiffs are invited to submit such a proposed instruction with their jury instructions submissions.

### III.  Conclusion

Accordingly, the court will trifurcate the trial as follows: (1) plaintiffs' case in chief against Credit Suisse, including damages findings and predicate findings as to plaintiffs' eligibility for a punitive damages award, (2) apportionment of liability, and (3) amount of punitive damages.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: February 5, 2013