UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CROWN CORK & SEAL COMPANY, INC. MASTER RETIREMENT TRUST, *et al.*,<br>　　　　　　　Plaintiffs,<br>　　　v.<br>CREDIT SUISSE FIRST BOSTON CORP., *et al.*,<br>　　　　　　　Defendants. | Case No. 12-cv-05803-JLG<br>Judge James L. Graham[*] |
| STATE OF ARIZONA, *et al.*,<br>　　　　　　　Plaintiffs,<br>　　　v.<br>CREDIT SUISSE FIRST BOSTON CORP., *et al.*,<br>　　　　　　　Defendants. | Case No. 12-cv-05804-JLG<br>Judge James L. Graham |
| CITY OF CHANDLER, *et al.*,<br>　　　　　　　Plaintiffs,<br>　　　v.<br>BANK ONE, N.A., *et al.*,<br>　　　　　　　Defendants. | Case No. 12-cv-05805-JLG<br>Judge James L. Graham |
| LLOYDS TSB BANK PLC,<br>　　　　　　　Plaintiff,<br>　　　v.<br>BANK ONE, N.A, *et al.*,<br>　　　　　　　Defendants. | Case No. 12-cv-07263-JLG<br>Judge James L. Graham |
| METROPOLITAN LIFE INSURANCE COMPANY, *et al.*,<br>　　　　　　　Plaintiffs,<br>　　　v.<br>BANK ONE, N.A., *et al.*,<br>　　　　　　　Defendants. | Case No. 12-cv-07264-JLG<br>Judge James L. Graham |

<u>Opinion and Order</u>

　　This matter is before the court on Credit Suisse's motion for reconsideration of the court's order denying Credit Suisse's motion for summary judgment as to plaintiffs' claims for conspiracy and punitive damages. Credit Suisse argues that reconsideration is appropriate because the court did not address certain of Credit Suisse's grounds for summary judgment. For the reasons set forth below, the motion for reconsideration is denied.

---

[*] The Honorable James L. Graham, United States Senior District Judge for the Southern District of Ohio, presiding pursuant to intercircuit assignment to the Southern District of New York.

I.   **Legal Standard**

A court has authority "to reconsider a prior decision at any time before the entry of final judgment." Shervington v. Village of Piermont, 732 F.Supp.2d 423, 425 (S.D.N.Y. 2010) (citing Fed. R. Civ. P. 54(b) and the inherent power of the court). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, et al., Federal Practice & Procedure § 4478 at 790). Motions for reconsideration should be brought sparingly and not for repeating "arguments already briefed, considered and decided." Schonberger v. Serchuk, 742 F.Supp. 108, 119 (S.D.N.Y. 1990).

II.  **Discussion**

   A.   **Timeliness**

As an initial matter, the court must express concern about the timeliness of the motion for reconsideration. The undersigned judge, now presiding over this matter pursuant to intercircuit assignment, presided over the consolidated multidistrict proceedings in In re National Century Financial Enterprises, Inc. Investment Litigation, MDL-1565 (S.D. Ohio). The court's decision denying Credit Suisse's motion for summary judgment, see In re Nat'l Century Fin. Enters., Inc., 846 F.Supp.2d 828 (S.D. Ohio 2012), was issued on March 2, 2012 as an order of the United States District Court for the Southern District of Ohio, pursuant to the authority granted to it by the Judicial Panel on Multidistrict Litigation under 28 U.S.C § 1407. The court then noticed a status conference for April 2, 2012, and plaintiffs filed a request for a suggestion of remand to the Panel. Credit Suisse opposed such a suggestion prior to April 2, 2012 so that Credit Suisse could evaluate whether to move for reconsideration. See doc. 1614 filed in Nat'l Century, No. 2:03-md-1565 (S.D. Ohio) ("The Noteholder Plaintiffs' request is premature because Credit Suisse's procedural rights have yet to expire. Credit Suisse has 28 days after the filing of this Court's Opinion to file a motion for reconsideration as to any part of the Opinion."). Credit Suisse did not move for reconsideration and the court filed a suggestion of remand with the Panel on April 2, 2012.

Even after the cases were transferred to the Southern District of New York and assigned to the undersigned judge on November 19, 2012, Credit Suisse waited over two months to move for

reconsideration.[1]  While the court will exercise its discretion to consider Credit Suisse's motion for reconsideration, see Shervington, 732 F.Supp.2d at 425, Credit Suisse's delay is troubling, particularly when the basis for its motion is not a recent change in the law or emergence of new evidence, but the court's alleged failure to address arguments made in the motion for summary judgment.

### B.     Conspiracy

Credit Suisse's motion to reconsider is two-fold as it concerns the conspiracy claim.  First, it argues that the court failed to properly evaluate whether the Arizona Noteholder plaintiffs had produced sufficient evidence of an agreement or "meeting of the minds."  Second, Credit Suisse argues that the court failed to address evidence showing that National Century insiders hid their fraud from Credit Suisse.

#### 1.     An Agreement

An agreement is an essential element of a conspiracy claim.  Abacus Fed. Sav. Bank v. Lim, 905 N.Y.S.2d 585, 588 (N.Y. App. Div. 2010).  Credit Suisse argues that the court improperly allowed evidence of Credit Suisse's knowledge and assistance in the alleged fraud to substitute as evidence of an agreement.  Credit Suisse rightly notes that knowledge and assistance alone amount to aiding and abetting; conspiracy requires the additional element of an agreement.  See U.S. v. Tyler, 758 F.2d 66, 70-71 (2d Cir. 1985).

Upon reconsideration, the court adheres to its previous ruling that the Arizona Noteholders produced sufficient evidence from which a jury could find that Credit Suisse tacitly agreed to join National Century's scheme to defraud investors.  Nat'l Century, 846 F.Supp.2d at 896-99.  The conspiracy claim is, not surprisingly, built on circumstantial evidence.  See Borden, Inc. v. Spoor Behrins Campbell & Young, Inc., 828 F.Supp. 216, 225 (S.D.N.Y. 1993) ("[D]irect proof of a conspiracy is seldom available, and therefore an illicit agreement may be shown via circumstantial evidence.").  As explained in the summary judgment order, "'Proof of tacit, as opposed to explicit, understanding is sufficient to show agreement, and among the factors a fact finder may consider in inferring a conspiracy are the relationship of the parties, proximity in time and place of the acts, and

---

[1] Though not squarely applicable here, S.D.N.Y. Local Civil Rule 6.3 requires that motions for reconsideration be filed within 14 days "after the entry of the Court's determination of the original motion."

the duration of the actors' joint activity.'" Nat'l Century, 846 F.Supp.2d at 896 (quoting Borden, 828 F.Supp. at 225).

The court's order carefully explained how, given the evidence of its knowledge, Credit Suisse's actions could be viewed by a reasonable jury as something more than mere assistance. The court examined clear evidence of a sequence of cooperative actions between representatives at Credit Suisse and National Century, as well as evidence of those parties' interdependence in keeping National Century's note issuing enterprises viable. See Miltland Raleigh-Durham v. Myers, 807 F.Supp 1025, 1053 (S.D.N.Y. 1992) (a conspiracy can be inferred from a sequence of cooperative actions and the parties' interdependence); First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co., 629 F.Supp. 427, 444 (S.D.N.Y. 1986) (defendant's maintenance of an "intimate business relationship" with a party whose unlawful acts were known to the defendant was a sufficient basis from which the factfinder could infer an agreement). These actions sometimes exceeded Credit Suisse's obligations as an initial purchaser of National Century notes and included: (1) extending short-term loans to National Century to keep the note programs afloat, (2) misrepresenting to rating agencies that the note programs' reserve accounts were not depleted, (3) refusing to demand a rigorous review of National Century's financials after anonymous allegations of fraud were raised, (4) failing to act after a potential investor discovered misuse of reserve funds, and (5) falsely endorsing investments in National Century after a ratings downgrade. See Nat'l Century, 846 F.Supp.2d at 897-99; see also Eaves v. Designs for Fin., Inc., 785 F.Supp.2d 229, 257-58 (S.D.N.Y. 2011) (existence of an agreement was sufficiently supported because the co-conspirator agreed to give legitimacy to a scheme by "falsely endorsing" a tax plan that otherwise would have been rejected).

Credit Suisse argues that the purported conspiratorial agreement is lacking in specific details as to which individuals entered the agreement, when they made their agreement, and for what purpose. But this is not an express contract being examined here. It is "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement," the evidence of which must be "viewed as a whole." Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co., Inc., 812 F.2d 786, 793-94 (2d Cir. 1987) (internal quotation marks and citation omitted). Even so, the court's summary judgment order identified that at the very least the alleged tacit agreement included National Century's Lance Poulsen and three employees in Credit Suisse's Asset Finance Group. See Nat'l Century, 846 F.Supp.2d at 897-99. The order discussed how the alleged

4

cooperative actions took place over a four-year span from 1998 to 2002.  Id.  And the order described the alleged conspiratorial purpose as being to defraud investors.  Id. at 896, 899.

The court thus overrules Credit Suisse's argument that the court's summary judgment ruling failed to properly evaluate whether the Arizona Noteholders had produced sufficient evidence of an agreement or meeting of the minds.

### 2. Evidence of Concealment

Credit Suisse next contends that the court's summary judgment ruling failed to address evidence showing that National Century insiders hid their fraud from Credit Suisse.  Credit Suisse points to the testimony of former National Century employees Sherry Gibson and Jon Beacham, who both testified that they did not tell of National Century's wrongdoing to anyone at Credit Suisse.  According to Credit Suisse, it could not have conspired with someone who concealed their fraud from it.

The court's ruling expressly addressed this evidence in its analysis of Credit Suisse's scienter, which is precisely the same context in which Credit Suisse's motion for summary judgment raised the issue.  Nat'l Century, 846 F.Supp.2d at 872 (discussing the testimony of Gibson and Beacham).  The court did not repeat this analysis in its discussion of the conspiracy claim, but did reference back to the substantial evidence from which a jury could conclude that Credit Suisse had knowledge of the material aspects of National Century's fraud.  Id. at 897.  The court remains of the view that the testimonies of Gibson and Beacham, though some evidence about Credit Suisse's scienter, do not entitle Credit Suisse to summary judgment.  The Noteholders have produced substantial evidence that National Century's fraud was not hidden from Credit Suisse – evidence that is sufficient to create a genuine dispute of fact.  Id. at 866-71.

In its motion for reconsideration, Credit Suisse also cites Gibson's testimony that she did not conspire with anyone other than National Century employees.  Credit Suisse did not cite this testimony in its motion for summary judgment, though it was available to Credit Suisse at the time of filing.  Moreover, Gibson's testimony again is simply one piece of evidence and does not alter the court's finding that the Noteholders have submitted sufficient evidence from which a jury could reasonably find that Credit Suisse conspired with National Century.  See Nat'l Century, 846 F.Supp.2d at 896-900.

The court thus overrules Credit Suisse's argument that the court's summary judgment ruling failed to address evidence that National Century hid its fraud from Credit Suisse.

### C. Punitive Damages

Credit Suisse argues that the court's summary judgment ruling failed to address whether the punitive damages claim failed because plaintiffs could not prove a harm to the public. See Walker v. Sheldon, 10 N.Y.2d 401, 405 (1961) ("[T]here may be a recovery of exemplary damages in fraud and deceit actions where the fraud, aimed at the public generally, is gross and involves high moral culpability."). Credit Suisse contends that the element of public harm cannot be met here because plaintiffs' note purchases were private securities transactions.

After careful reexamination of Credit Suisse's motion for summary judgment and its reply brief in support, the court finds that Credit Suisse never moved for summary judgment on the ground that the public harm requirement was not met.[2] Rather, Credit Suisse moved for summary judgment solely on the grounds that plaintiffs could not prove that Credit Suisse acted with wanton dishonesty.[3] Credit Suisse elaborated in its reply brief that no governmental authority had filed charges against Credit Suisse and that Credit Suisse itself suffered significant losses to National Century's fraud.

Simply put, Credit Suisse elected not to move for summary judgment against plaintiffs' punitive damages claim on the ground that the public harm requirement was not met. It would be unfair to plaintiffs to reopen the matter on the eve of trial, and the court declines to entertain this aspect of the motion for reconsideration. See Fragin v. Mezei, No. 09 Civ. 10287(AJN), 2012 WL 6628021, at *3 (S.D.N.Y. Dec. 20, 2012) ("These are new arguments not raised by Defendants in their motion for summary judgment. As such they are not properly raised on a motion for reconsideration."); Richard Feiner & Co. v. BMG Music Spain, No. 01 Civ. 0937(JSR), 2003 WL 21496812, at *1 (S.D.N.Y. June 27, 2003) ("[P]laintiff is advancing new arguments without excuse as

---

[2] Tellingly, Credit Suisse's motion for reconsideration contains no citation back to its briefs on this point.
[3] The entirety of Credit Suisse's legal argument in support of its motion for summary judgment was as follows: "Plaintiffs can point to no evidence Credit Suisse even knew about the NCFE fraud during the relevant time – let alone acted with 'wanton dishonesty' amounting to 'criminal indifference.' To the contrary, the evidence in the record clearly establishes that Credit Suisse was itself an unknowing victim of the fraud." Doc. 1520 filed in Nat'l Century, No. 2:03-md-1565 (S.D. Ohio), at 175-76.

to why these arguments were not raised previously, and these arguments therefore are not cognizable on a motion for reconsideration."). See also Carolco Pictures, Inc. v. Sirota, 700 F.Supp. 169, 170 (S.D.N.Y. 1988) (stating that the local rules do not permit "the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters").

### III.     Conclusion

Accordingly, Credit Suisse's motion for reconsideration (doc. 134) is DENIED.


                                            s/ James L. Graham
                                            JAMES L. GRAHAM
                                            United States District Judge

DATE: February 5, 2013